

BY: Eric G. Zajac, Esquire
Attorney I.D. No. 66003
Eric@TeamLawyers.com
1835 Market Street, 26th Floor
Philadelphia, PA 19103
(215) 575.7615; (215) 575.7640 (Fax)

ATTORNEY FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLLEEN CAMPBELL<br>209 Liberty Bell Circle<br>Downingtown, PA 19335<br>     v.<br><br>MARS, INC.<br>1600 Broadway<br>New York, NY 10019 | Case<br><br>JURY DEMAND |

## NATIONWIDE CLASS ACTION COMPLAINT

### INTRODUCTION

1. Plaintiffs bring this action to secure redress for the violation by Defendant of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA") for the issuance of non-conforming credit card receipts at M&M World stores in Times Square, New York, Las Vegas, Nevada and Orlando, Florida, and anywhere else nationally.

2. One provision of FACTA, codified as 15 U.S.C. §1681c(g)(1), provides that:

   > … **no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**
   > 15 U.S.C. §181c(g)(1).

3. The law gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006. Defendant's objectively unreasonable conduct presented an unreasonable risk of harm in their willful disregard of FACTA law and failed to protect Plaintiffs, and others similarly situated, against identity theft and credit card and debit card fraud by continuing to print more than five (5) digits of credit card account numbers and/or allowing ten (10) digits to appear on receipts provided to debit card and credit card cardholder's transaction business with Defendant.

4. Plaintiffs bring this action against Defendant based on Defendant's violation of 15 U.S.C. §1681, *et seq*. Plaintiffs seek statutory damages, attorney fees and costs.

## PARTIES

5. At all relevant times, Plaintiff COLLEEN CAMPBELL was a resident and citizen of Pennsylvania.

6. "M&Ms World" is a Trademark of Mars, Inc. used at theme stores operated in Times Square, New York, Las Vegas, Nevada and Orlando, Florida, and internationally in London and Shanghai.

7. At all relevant times, Defendant MARS, INC., through its trademark "M&Ms World," owned, controlled, operated, and managed and did businesses throughout the United States of America as a boutique theme retailer and under the brand name M&Ms World in at least three states including but not limited to Nevada, New York, and California.

8. At all relevant times, Defendant MARS, INC., was accepting credit cards or debit cards for the transaction of business within the meaning of FACTA.

9. Mars, Incorporated is an American global manufacturer of confectionery, pet food, and other food products with over US$ 30 billion in annual sales in 2015, and is ranked as the 6th largest privately held company in the United States by Forbes. Administratively headquartered in McLean, Virginia, the company is entirely owned by the Mars family.

10. Mars operates in six business segments around the World: Chocolate (Hackettstown, New Jersey), Petcare (Brussels, Belgium , <u>Poncitlán and Jalisco, Mexico</u>), Wm. Wrigley Jr. Company (Chicago, Illinois), Food (Rancho Dominguez, California), Drinks (West Chester, Pennsylvania), and Symbioscience (Germantown, Maryland).

11. Additionally, Mars, Inc. has a manufacturing facility in Elizabethtown, Pennsylvania.

12. Mars, Inc. opened the Las Vegas M&Ms World store in 1997, the Orlando store in 2005, and the Times Square store in 2006.

13. Defendant MARS, INC., directed activity that caused M&Ms World theme stores to print more than five (5) of its customer's credit and debit card numbers on receipts.

14. At all relevant times, MARS, INC., managed the planning and implementation of new store roll outs, new requirements analysis, process improvements, project management for credit card implementation and mandated an overall course of action concerning credit card processing—including truncation of credit card information on receipts—at all M&Ms World theme stores, and authorized the manner in which those stores carried out that course of action.

15. At all relevant times, it was foreseeable to MARS, INC., that its mandated course of action would cause its customers' credit and debit card account numbers to be printed on the receipts in a manner that was in violation of FACTA.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction under 28 U.S.C. §1331 (general federal question), and 15 U.S.C. §1681p (FRCA).

17. Venue in this District is proper because Defendant transacts business in the District and is deemed to reside here.

## FACTS

18. On July 23, 2016, Plaintiff COLLEEN CAMPBELL received from Defendant at its establishment in Times Square, a computer-generated cash register receipt which displayed the first six (6) digits of the her credit card number as well as the last four (4) digits of the her credit card number.

19. On July 26, 2016 a consumer received from Defendant at its establishment in Orlando, a computer-generated cash register receipt which displayed the first six (6) digits of the consumer's credit card number as well as the last four (4) digits of the consumer's credit card number.

20. On July 26, 2016 a consumer received from Defendant at its establishment in Las Vegas, a computer-generated cash register receipt which displayed the first six (6) digits of the consumer's credit card number as well as the last four (4) digits of the consumer's credit card number.

21. On information and belief, it is possible to replicate a credit card number using the first six (6) digits and last four (4) digits of the card. Further, the printing of the first six (6) digits and last four (4) digits of an individual's credit card number materially increases the risk of identity theft and/or of credit card fraud.

## INDUSTRY KNOWLEDGE REGARDING THE TRUNCATION OF CREDIT/DEBIT CARD ACCOUNT INFORMATION

22. In early 2003, the payment card industry and Congress announced that they were working together to combat identity theft.

23. A critical part of this joint effort was the truncation of personal data from credit and debit card receipts presented to consumers at the point of sale.

24. On March 6, 2003, Visa CEO Carl Pascarella held a joint press conference with Senators Judd Gregg, Jon Corzine, Patrick Leahy and Dianne Feinstein to announce Visa USA's new account truncation program to protect consumers from identity theft.

25. At the press conference, Mr. Pascarella stated:

"Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether . . . . "The first phase of this new policy goes into effect July 1, 2003 for all new terminals. I would like to add, however, that even before this policy goes into effect, many merchants have already voluntarily begun truncating receipts, thanks to the groundwork that we began together several years ago.

\* \* \* \*

"Visa USA is pleased to be working with Senator Feinstein, and the other senators here today in the fight to protect consumers from identity theft. After all, we share the same goals."

26. On July 9, 2003, L. Richard Fischer, presented a written statement to the United States House of Representatives Committee on Financial Services on behalf of Visa

USA, Inc., supporting the truncation requirements of what ultimately became FACTA. Therein, Mr. Fischer stated:

> "Although Visa generally believes that the details of preventing identity theft should be left to financial institutions that are best suited to address ever evolving fraud techniques, Title II could provide important benefits to consumers and financial institutions alike by establishing workable identity theft provisions and ensuring that these provisions benefit from national uniformity. For example, Section 203 of Title II would prohibit any merchant or other entity that accepts credit and debit cards from printing more than the last four digits of the card account number or the expiration date upon receipts provided to cardholders at the point of sale . . . ."

27. The Office of Thrift Supervision, United States Department of Treasury ("OTS"), is responsible, inter alia, for monitoring financial institution compliance with FACTA.

28. Toward this end, the OTS publishes an Examination Handbook ("Handbook") which assists OTS field personnel when they perform an examination, or compliance audit, of a given financial institution.

29. The February 2006 Edition of the Handbook states, in relevant part:

> Truncation of Credit and Debit Card Account Numbers Ensure that electronically generated receipts from ATM and POS terminals or other machines do not contain more than the last five digits of the card number and do not contain the expiration dates.

30. FACTA's requirement that merchants truncate credit and debit card expiration dates was phased in over a three year period. During the three year phase-in period, there was extensive publicity regarding the law's requirements.

31. Many restaurant and retail trade associations apprised their merchant members that FACTA requires truncation of the entire expiration date and all but the last five digits of the cardholder account number.

32. Heartland Payment Systems, Inc. ("Heartland"), for example, provides credit and debit card, payroll and related processing services to restaurant, hotel and retail merchants throughout the United States, and indicates on its website that it provides services to over 137,000 merchants. In 2003, Heartland broadly disseminated a pamphlet which included the following statement:

> "Your credit card terminal is now – or will soon be required by law or the bankcard associations to truncate – or limit – the information that can appear on electronically printed sales receipts. What that means is that on all cardholder numbers:
>
> ■ The expiration date must be eliminated
>
> ■ All but the last four numbers of the card number must be obscured.
>
> * * * *"

33. In 2006, Heartland broadly disseminated a second pamphlet, which included the following statement:

> "Make every transaction a safe one.
>
> * * * *

- The cardholder's receipt should not include the card's expiration date and should only include the last 4 or 5 digits of the card number.

\* \* \* \*"

34. Many restaurant and retail trade associations apprised their merchant members that FACTA imposed truncation requirements mirroring Visa's truncation requirements. For example, the Virginia Retail Merchants Association reported in its February/March 2005 Newsletter that:

    "FACTA says receipts for credit and debit card transactions may not include more than the last five digits of the card number or expiration date."

35. In the April 23, 2003 edition of the monthly magazine for the National Case Association of Convenience Stores, the national trade association for Convenience and Petroleum Retailing, an article titled "Visa USA Targets Identity Theft," appeared and included the following language:

    "[A]t a press conference held last month with Sen. Dianne Feinstein (D-CA), Visa announced its account truncation security policy. This protects consumers from identity theft by limiting cardholders' information on receipts to the last four digits of their accounts. The policy will also eliminate the card's expiration date from receipts altogether. Feinstein has introduced legislation to combat identity theft."

36. The April 2005 edition of the Food Industry Advisor, the newsletter for the Pennsylvania Food Merchants Association and Pennsylvania Convenience Store Council, included an article regarding the requirements of credit card truncation under FACTA which included the following language:

"[A]ccording to the FACT Act, `no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction. . . . .'" This same article appeared in the April 2005 Edition of the NACS Magazine, published by the National Association of Convenience Stores.

37. In its Spring 2004 Newsletter, the Connecticut Restaurant Association Newsletter included an article regarding Requirements for Credit Card Truncation, which stated: "[T]here is currently no Connecticut state law, so the two ruling Requirements come from VISA and a new Federal Fair Credit Reporting Act signed in December 2003. Truncation requires that all but the last four digits of the cardholder account number, along with the entire expiration date, be suppressed on the cardholder copy of the transaction receipt generated from all electronic terminals. . . ."

38. In the January 2005 edition of the Massachusetts Restaurant Association Newsletter, an article appeared apprising Association members that both Visa and MasterCard require truncation of the entire expiration date and all but the last four digits of the cardholder account number.

39. In the March/April 2006 Edition of the Ohio Independent Automobile Dealers' Association Dealer News Magazine, an Article was published entitled "What You Should Know about Credit and Debit Card Processing and the FACTAs about Card Truncation." The article states:

> "What is Card Truncation? This federal law sets deadlines by which the receipt electronically printed from a credit card sale must be truncated – meaning, the receipt given to the customer shows no more than the last five digits of the customer's credit card number and does not show the expiration date. Business owners are responsible for merchant account compliance with the truncation regulations and must make sure their printed cardholder receipts do not contain expiration dates or full account numbers."

This same article appeared in the March/April edition of the West Coast Independent Automobile Dealer News.

40. The Independent Insurance Agents & Brokers of America circulated a report to its members dated June 5, 2005 titled: "Overview of the Fair Credit Reporting Act, The Fair and Accurate Credit Transactions Act, and the Drivers Privacy Protection Act." In relevant part, this publication stated:

> "Under the FACT Act, businesses and others accepting credit or debit cards for payment may not print more than the last five digits of the card number nor may they print the expiration date upon any receipt provided to the cardholder at the point of sale."

41. In the November 18, 2004, edition of the Compliance Challenge, published by the Credit Union National Association News, a report was published that included the following language:

> "FACTA prohibits anyone that accepts credit/debit cards to print more than the last 5 digits of the card number or expiration date on any receipt at the point of sale or transaction . . . ."

42. The August 12, 2006, edition of Rules for Visa Merchants (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that only the last four digits of an account number should be printed on the customer's copy of the receipt and the expiration date should not appear at all. These statements were accompanied by a picture of a receipt showing precisely what had to be removed. VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

43. Defendant accepts Visa cards and are party to a contract requiring compliance with the Visa requirement above in paragraph 42.

44. Visa USA's agreements with the American merchants which accept Visa brand credit or debit cards are defined in part in a manual titled Rules for Visa Merchants, Card Acceptance and Chargeback Management Guidelines ("Visa Merchant Rules").

45. The Visa Merchant Rules Manual includes a description of Visa's truncation requirements. For example, the 2006 edition of the Manual states:

> "Visa requires that all new electronic POS terminals provide account number truncation on transaction receipts. This means that only the last four digits of an account number should be printed on the customer's copy of the receipt. After July 1, 2006, the expiration date should not appear at all. POS terminals must comply with these requirements by July 1, 2006 . . . . "

46. The truncation standards set forth in the Visa Merchant Rules, which are part of the contract between Visa and the merchants which accept its debit and/or credit cards, served as the basis for what ultimately became the truncation requirements of FACTA.

47. In May 2007, the Federal Trade Commission issued a business alert informing businesses that "[a]ccording to the federal Fair and Accurate Credit Transaction Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten — or truncate — the account information. You may include no more than the last five digits of the card number, and you must delete the card's expiration date. For example, a receipt that truncates the credit card number and deletes the expiration date could look like this::

    ACCT: ***********12345

    EXP: ****"

    FTC Business Alert, Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts. Available at http://business.ftc.gov/documents/alt007-slip-showing-federal-law-requires-all-businesses-truncate-credit-card-information-receipts (last visited November 2014).

48. The FTC again warned again that the failure to truncate the expiration date http://www.ftc.gov/opa/2007/05/slipshowing.shtm (last visited March 13, 2012) ("The business alert advises that merchants who fail to comply with the law could face FTC law enforcement action, including financial penalties and federally-enforced restrictions or requirements.")

49. The FTC on December 14, 2007, further stated:

    To help make merchants aware of their responsibility to truncate this information, the Commission's regional offices led a nationwide campaign that included sending the FTC's Business Alert, "Slip Showing?" to 187 national trade associations. The alert also is available on FTC's Web site www.ftc.gov.

> Merchants who fail to comply with the law could face FTC law enforcement action, including civil penalties of up to $2,500 per violation.
>
> http://www.ftc.gov/opa/2007/12/slip.shtm (last visited November 2014).

50. The May 2007 FTC business alert was also posted on the Better Business Bureau's website. Available at http://www.bbb.org/us/article/4425.

## DEFENDANT'S KNOWLEDGE OF FACTA'S TRUNCATION REQUIREMENTS

51. Defendant, MARS, INC., opened its three (3) United States "M&Ms World" stores in 1997 (Las Vegas), 2005 (Orlando), and 2006 (Times Square). The Times Square store is the highest grossing among the three.

52. Upon information and belief Defendant was aware or should have been aware of the Industry Standards Regarding Truncation Requirements for Credit/Debit Cards outlined in this Complaint and widely available and publicized in the United States.

53. Defendant had actual knowledge of FACTA's truncation requirements and/or acted in an objectively unreasonable manner in which such conduct presented an unreasonable risk of harm in their willful disregard of FACTA's truncation requirements, specifically the requirement that credit and debit card account numbers be truncated on receipts and not more than five (5) digits be presented to consumers at the point of sale.

54. Upon information and belief, during all times relevant to this Complaint, Defendant had agreements with various credit card issuers, including VISA, MasterCard, American Express and others, and those agreements clearly and unambiguously

apprised Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

55. Upon information and belief, prior to the transactions at issue, Defendant received periodic communications from credit card issuers advising Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

56. Upon information and belief, prior to the transaction at issue, Defendant received monthly statements from its merchant bank (or other similar entity that performed credit and debit card payment clearing services for Defendant) which apprised Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

57. Upon information and belief, prior to the transactions at issue, Defendant received written information from its POS (Point of Sale) provider(s) apprising Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

58. Upon information and belief, prior to the transactions at issue, Defendant received information from trade associations and/or other similar entities apprising Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

59. Defendant's conduct is objectively unreasonable and is not only a violation under a reasonable reading of the statute's terms, but shows that the Defendant ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

## CLASS ALLEGATIONS

60. Plaintiffs bring this action on behalf of a class pursuant to Fed. R. Civ. P.23(a) and (b)(3).

61. The class is defined as all persons to whom the Defendant provided an electronically printed receipt at the point of sale of transaction, in a transaction occurring in the nation after December 1, 2004, which receipt displays more than five (5) digits of the person's credit card or debit card.

62. The class is so numerous that joinder of all individual members in one action would be impracticable.

63. Upon information and belief, there are over 50 persons to whom the Defendant provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in the nation after December 1, 2004, which receipt displays more than five (5) digits of the person's credit card or debit card.

64. Plaintiffs' claims are typical of the claims of the class members. All are based on the same legal theories and arise from the same unlawful, objectively unreasonable conduct of Defendant which presented an unreasonable risk of harm and willful disregard of FACTA.

65. There are common questions of fact and law affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following:

    a. Whether Defendant had a practice of providing customers with a sales or transaction receipt on which Defendant printed more than five (5) digits of the credit card or debit card.
    b. Whether Defendant thereby violated FACTA;
    c. Whether Defendant's conduct was negligent, reckless and/or willful.

66. Plaintiff will fairly and adequately represent the class members. Plaintiff has no interests that conflicts with the interest of the class members. Plaintiffs have retained experienced counsel.

67. A class action is superior to other available means for the fair and efficient adjudication of the claims of the class members. Individual actions are not economically feasible.

## VIOLATION ALLEGED

68. Defendant violated 15 U.S.C.§1681c(g)(1), which provides, in relevant part, that:

> **… no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**
> **15 U.S.C.§1681c(g)(1)**

69. With respect to machines that were first put into use after January 1, 2005, 15 U.S.C.§1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C.§1681c(g)(1).

70. With respect to machines that were in use before January 1, 2005, 15 U.S.C.§1681c(g)(3)(A) required compliance with the provisions of 15 U.S.C.§1681c(g)(1) on or after December 4, 2006.

71. Defendant accepts credit cards and/or debit cards in the course of transacting business with persons such as Plaintiffs and the class members. In transacting such business Defendant uses cash registers and/or other machines or devices that electronically print receipts for credit card and/or debit card transactions.

72. After the effective date of the statue and thereafter to date, Defendant, at the point of sale or transaction, provided Plaintiff and each class member with one or more

electronically printed receipts on each of which Defendant printed more than five (5) digits, and in most instances printed (10) digits of the credit card or debit card.

73. FACTA was enacted in 2003 and gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring compliance for all machines no later than December 4, 2006.

74. On information and belief, Defendant knew or should have known of the requirement concerning the truncation of credit and debit card numbers and prohibition on printing more than the last five digits of the credit card, but continued to print ten (10) digits, anyway.

75. On information and belief, VISA, MasterCard, American Express, the PCT Security Standards Council – a consortium founded by VISA, MasterCard, Discover, American Express and JCB – Companies that sell cash registers and other devices for processing of credit or debit card payments, and other entities informed Defendant about FACTA, including its specific requirements concerning the truncation of credit card and debit card number and prohibition on the printing of expiration dates, and Defendant's need to comply with the same.

76. The truncation requirement was widely publicized among retailers.

77. Defendant's business peers and competitors brought their credit card and debit card receipt printing process into compliance with FACTA by, for example, programming their card machines and devices to prevent them from printing more than five digits of the card number upon the receipts provided to the card holders.

78. Defendant displayed objectively unreasonable conduct in efforts to rapidly expand United States operations, and even though Defendant knew of the requirements

concerning the truncation of credit and debit cards and risks of identity theft to customers, Defendant printed receipts in violation of FACTA.

79. Defendant's objectively unreasonable conduct presented an unreasonable risk of harm to Plaintiffs due to Defendant's willful disregard of FACTA's requirements and continued to use such cash registers or other machines or devices the print receipts in violation of FACTA.

WHEREFORE, Plaintiffs requests that the Court enter judgment in favor of Plaintiffs and the class members and against Defendant as follows;

   a. For statutory damages of $100 to $1,000 per violation;
   b. For attorney's fees, litigation expenses and costs; and
   c. For such other and further relief as the Court may deem proper.

## JURY DEMAND

Plaintiff demands trial by jury.

ZAJAC & ARIAS, LLC

BY: _____
ERIC G. ZAJAC
Attorney for Plaintiffs

Dated: July 27, 2016